UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WEYERHAEUSER COMPANY, INC.,

    Plaintiff,

    v.

KEATING FIBRE INTERNATIONAL, INC.,

    Defendant.

CASE NO. C05-1986JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on a Fed. R. Civ. P. 12(b)(2) motion (Dkt. # 3) from Defendant Keating Fibre International, Inc. ("Keating") to dismiss this action for lack of personal jurisdiction or, alternatively, to stay the action. The court has considered the parties' briefing and accompanying declarations. For the reasons stated below, the court DENIES the motion.

## II. BACKGROUND

Keating is a Delaware corporation in the business of, among other things, distributing and brokering containerboard and linerboard for use in the corrugated box industry. Weyerhaeuser Company, Inc. ("Weyerhaeuser") is a Washington corporation in the business of, among other things, manufacturing and selling containerboard and linerboard for use in the corrugated box industry.

ORDER – 1

Keating purchased prime linerboard from Weyerhaeuser for sale to customers in Mexico. In April 2005 Weyerhaeuser notified Keating that it was terminating the relationship between them. In August 2005, Weyerhaeuser discontinued the relationship although it agreed to accept new orders from Keating during a transition period.

A dispute has arisen between the parties regarding their business relationship. Weyerhaeuser filed the instant action in Washington (the "Washington action") on November 30, 2005. Keating filed a complaint against Weyerhaeuser, based on the same business relationship between the parties, in the Eastern District of Pennsylvania on December 13, 2005 (the "Pennsylvania action"). Keating seeks to dismiss the Washington action for lack of personal jurisdiction or, in the alternative, to stay the Washington action in favor of the Pennsylvania action.

## III.  ANALYSIS

Weyerhaeuser must make a prima facie showing of personal jurisdiction to survive Keating's motion to dismiss. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1128-29 (9th Cir. 2003). Weyerhaeuser must provide evidence that, if believed, would support the court's exercise of jurisdiction over Keating. Id. at 1129. The court need not accept Plaintiff's bare allegations if Keating controverts them with evidence. See AT&T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). If both parties provide evidence supporting different versions of a fact, however, the court must resolve competing inferences in Weyerhaeuser's favor. Harris Rutsky, 328 F.3d at 1129.[1]

---

[1] A preponderance of evidence standard applies where the court holds an evidentiary hearing to address personal jurisdiction. Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1284-85 (9th Cir. 1977). Neither Weyerhaeuser nor Keating have requested an evidentiary hearing.

ORDER – 2

Where no applicable federal statute addresses the issue, a court's personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court sits. Terracom v. Valley Nat. Bank, 49 F.3d 555, 559 (9th Cir. 1995). Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits. Shute v. Carnival Cruise Lines, 783 P.2d 78, 82 (Wash. 1989). The court must therefore determine whether exercising jurisdiction over Keating comports with federal due process. Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002).

A court can exercise its power over a non-resident defendant (absent the defendant's consent) only if it has general or specific jurisdiction. Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). Where a defendant has "substantial" or "continuous and systematic" contacts with the forum state, it is subject to general jurisdiction, and can be haled into court on any action, even one unrelated to its contacts. Id. If a defendant is not subject to general jurisdiction, it may be subject to specific jurisdiction if the action upon which it is sued arises from its contacts within the forum state. Id. In either case, the critical factor in determining personal jurisdiction is the extent of the defendant's contacts with the forum state. The court therefore must examine Keating's contacts with Washington to determine if they support the exercise of either general or specific jurisdiction.

**A.   General Jurisdiction**

A plaintiff asserting general jurisdiction must meet an "exacting standard." Arnold Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 804 (9th Cir. 2004). A defendant is not subject to general jurisdiction unless its contacts are so "substantial or continuous and systematic" that they "approximate physical presence" in the forum state. Bancroft & Masters, 223 F.3d at 1086. The Ninth Circuit "regularly [has] declined to

ORDER – 3

find general jurisdiction even where the [defendant's] contacts were quite extensive." Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc., 1 F.3d 848, 851 n.3 (9th Cir. 1993).[2]

General jurisdiction requires a much more substantial connection to the forum than does specific jurisdiction. Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). A court must consider "all of the defendant's activities that impact the state, including whether the defendant makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, has employees, or is incorporated there." Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1478 (9th Cir. 1986). A mere showing that a defendant has systematic business contacts with the forum, however, is insufficient. Bancroft & Masters, 223 F.3d at 1086. A plaintiff must show that the defendant's activities transcend doing business "with" the forum state such that it is fair to say that it is actually doing business "in" the forum state. Id.; see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 418 (1984) ("[M]ere purchases, even if occurring at regular intervals, are not enough" to support general jurisdiction.) It is not enough to show that the defendant has "stepped

---

[2]The court's own review of Ninth Circuit and Supreme Court cases reveals that general jurisdiction is rarely available, even with substantial contacts in the forum. E.g., Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990) (finding no general jurisdiction despite continuous sales to Washington residents, ongoing advertising in Washington, and ongoing business relationships with Washington agents), rev'd on other grounds, 499 U.S. 585 (1991); Helicopteros Nacionales, 466 U.S. at 411, 417 (finding no general jurisdiction despite purchase of more than 80% of helicopter fleet, parts, and accessories from forum state over an eight-year period, plus numerous related business trips to forum); Bancroft & Masters, 223 F.3d at 1086 (no general jurisdiction despite continuous business relationship with two television networks and a handful of California vendors). By contrast, in the sole Supreme Court case in which a plaintiff asserting personal jurisdiction succeeded, the Court found that a corporation doing business in the Phillipines could be subject to general jurisdiction in Ohio because its director, forced out of the country during the Second World War, had directed all activities of the corporation from Ohio. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 447-49 (1952).

ORDER – 4

through the door" of the forum through ongoing business contacts; the plaintiff must show that the defendant "has sat down and made itself at home." Glencore Grain, 284 F.3d at 1125.

In response to Keating's arguments regarding a lack of general jurisdiction over it, Weyerhaeuser appears to concede that general jurisdiction exists, and the court will not deal with this contention further.

**B.     Specific Jurisdiction**

The Ninth Circuit applies a three-part test to determine specific jurisdiction. First, the nonresident defendant must "do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[.]" Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). Second, the plaintiff's claim must "arise[] out of or result[] from the defendant's forum-related activities . . . ." Id. Third, the "[e]xercise of jurisdiction must be reasonable." Id. If the plaintiff meets his burden on the first two parts of the test, the burden shifts to the defendant to satisfy the third part by presenting a "compelling case" that the exercise of jurisdiction is unreasonable. Schwarzenegger, 374 F.3d at 802 (citation omitted).

    **1.     Purposeful Availment**

Under the first prong of the three-part specific jurisdiction test, Weyerhaeuser must establish that Keating either purposefully availed itself of the privilege of conducting activities in Washington, or purposefully directed its activities towards Washington. The Ninth Circuit uses the phrase "purposeful availment" in shorthand fashion to include both purposeful availment and purposeful direction, see, e.g., Harris Rutsky, 328 F.3d at 1130 (citing Haisten v. Grass Valley Med. Reimbursement Fund

ORDER – 5

Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986)), but availment and direction are two distinct concepts. A purposeful availment analysis is most often used in suits sounding in contract. See, e.g., Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001).

As explained in Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988):

> Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or solely the actions of the plaintiff. In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.

Id. at 1195 (citations omitted). The Supreme Court has explained: "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citations and internal quotations omitted). The Ninth Circuit has further explained that "the purposeful availment analysis turns upon whether the defendant's contacts are attributable to actions by the defendant himself, or conversely to the unilateral activity of another party." Roth v. Garcia Marquez, 942 F.2d 617, 621 (9th Cir. 1991) (quoting Hirsch, 800 F.2d at 1478).

In this case, Keating representatives made trips to Washington to discuss sales, marketing and other aspects of its commercial relationship with Weyerhaeuser. As such, Keating has purposefully availed itself of Washington as a forum and has not been haled into Washington by actions attributable to Weyerhaeuser or the unilateral activity of a third party.

The court is mindful of Keating's argument that the object of the parties' commercial relationship was to manufacture, deliver and sell goods outside of

ORDER – 6

Washington.  In an age of out-of-country manufacture and shipping, these factors only marginally favor Keating.  While neither party decisively triumphs under the purposeful availment analysis, Weyerhaeuser has established sufficient purposeful availment to justify a finding of jurisdiction on this prong.

### 2. Forum-Related Activities

Keating repeats its argument that its commercial relationship with Weyerhaeuser centered on the manufacture, delivery and resale of products outside Washington in support of its position that Weyerhaeuser's claim does not arise out of "forum-related" activities.  Keating concedes, however, that during the visits of its personnel to Washington, the parties discussed their commercial relationship, sales volume and product quality of the goods that form the basis of the current dispute.  As such, the court is satisfied that the second prong of the specific jurisdiction test is met.

### 3. Reasonableness

The third prong asks whether the exercise of jurisdiction would be reasonable. Data Disc, 557 F.2d at 1287.  The Ninth Circuit has set forth a universe of factors to be considered in determining whether the exercise of jurisdiction over a nonresident defendant satisfies the reasonableness test: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant; (3) conflicts of law between the forum and defendant's home jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  Sinatra, 854 F.2d at 1199-1201; Insurance Co. of North America v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981) (first setting out factors).  Because no one factor is dispositive, the court must balance the seven.  FDIC v. British-American Ins. Co., Ltd., 828 F.2d 1439, 1442 (9th Cir. 1987).

ORDER – 7

### a. Extent of Purposeful Interjection

In view of the purposeful availment prong of the Ninth Circuit test, this issue has been addressed and decided in Weyerhaeuser's favor.

### b. Burdens on Defendant

Both parties make arguments about the most favorable location for this proceeding. While Pennsylvania would be more convenient for Keating, Washington is not unreasonably burdensome.

### c. Extent of Conflict With Sovereignty of Foreign State

Pennsylvania and Washington have equal interest in seeing that corporations residing in their state are treated fairly. This factor is split equally to both parties.

### d. Forum State's Interest in Adjudication

While <u>Sinatra</u> argues that states have a greater interest in tort cases than contract cases, 854 F.2d at 1200, the impact of a contract case on a resident of any state could be profound. This factor is a toss-up.

### e. Most Efficient Judicial Resolution

This factor holds no edge for either party. As Keating notes, this case ultimately involves goods manufactured, delivered and re-sold outside of either Pennsylvania or Washington. Witnesses and records will be located in various locations, and both Pennsylvania and Washington are equally efficient forums for resolution of the dispute.

### f. Convenience and Effectiveness of Relief for Plaintiff

Weyerhaeuser can obtain effective relief in either forum. It would be more convenient for it to do so in Washington. This factor weakly favors Weyerhaeuser.

### g. Availability of an Alternative Forum

There are several available forums. Given the options, this factor does not count for much in the court's analysis.

ORDER – 8

      **h.**      **Balancing the Seven Factors**

Of the seven factors, the purposeful interjection factor is the most relevant to deciding this prong of the jurisdiction test. The remainder do not demonstrate that litigating this case in Washington is unreasonable. As such, the court finds that its exercise of jurisdiction would be reasonable. Shute, 897 F.2d at 386.

**4.**      **Weighing the Three Prongs**

Applying the three-prong Ninth Circuit test, the court has found purposeful availment, "forum-related" activities in Washington, and that an exercise of jurisdiction would not be unreasonable. As such, the court DENIES Keating's motion to dismiss.

**C.**      **Motion to Stay**

Keating also argues that if the court finds jurisdiction, it should, nonetheless, stay the Washington action in favor of the Pennsylvania action. Both parties acknowledge the importance of the "first-to-file" rule in deciding this issue. Under the rule, when cases involve the same parties and issues, the second district court has discretion to transfer, stay or dismiss the second case in the interest of efficiency and judicial economy. Cedars-Sinai Medical Center v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997). Both parties agree that the Washington action was filed first.

There are circumstances which constitute an exception to the "first-to-file" rule. They include bad faith, anticipatory suit and forum shopping. Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 628 (9th Cir. 1991). Keating argues that all three are present in the instant action.

The most meritorious of Keating's arguments is whether Weyerhaeuser's suit so lacks substance as to be in bad faith or anticipatory in nature. Wilton v. Seven Falls Co., 515 U.S. 277, 289-90 (1995). Both parties point to Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998), as controlling law on the issue. The court agrees

ORDER – 9

with Weyerhaeuser's analysis of the Gov't Employees factors in deciding this issue. The Washington declaratory action suit has the potential of settling all aspects of the parties' dispute if Keating asserts counterclaims. The other factors mentioned in Gov't Employees have generally been discussed in the court's jurisdiction analysis and favor allowing the Washington action to proceed. As such, Keating's motion to stay is DENIED.[3]

## IV.  CONCLUSION

Having found that it has jurisdiction over Keating and that it should not stay the pending action, the court DENIES Keating's motion (Dkt. # 3).

Dated this 21st day of February, 2006.

_(signature)_

JAMES L. ROBART
United States District Judge

---

[3] Subsequent to the filing of the motion before the court, the parties filed various pleadings (Dkt. ## 16, 17 and 18) related to the Pennsylvania action. None of these documents have an impact on the outcome of the motion pending before the court. As such, the court STRIKES Keating's Motion to Strike (Dkt. # 17) as moot.

ORDER – 10